STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US

| | | |
|---|---|---|
| LINDA THOMPSON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2022LA001292 |
| v. | ) ) ) | |
| ARMY AND AIR FORCE EXCHANGE SERVICE, | ) ) ) | |
| Defendant. | ) | |

## SUMMONS

TO:    Army and Air Force Exchange Service, c/o Tom Shull, Director/Chief Executive
Officer, 3911 S. Walton Walker Blvd., Dallas, Texas 75236

You are hereby summoned and required to file an answer in this case, or otherwise file your
appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of
this summons, exclusive of the day of service.  If you fail to do so, a judgment or decree by
default may be taken against you for the relief prayed in the complaint.

This summons may not be served later than 30 days after its date.



Witness, October 27 _____, 2022.
/s/ Thomas McRae   /s/ Sarah Friedrich
_____
Clerk of Circuit Court

Roy C. Dripps, #6182013, Attorney for Plaintiff _____
ADWB, LLC, 51 Executive Plaza Court, Maryville, IL 62062 _____
(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

Date of Service: _____, 20____.
(To be inserted by officer on the copy left with the defendant or other person)

***EFILED***
Case Number 2022LA001292
Date: 10/14/2022 9:19 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

## IN THE CIRCUIT COURT
## THIRD JUDICIAL CIRCUIT
## MADISON COUNTY, ILLINOIS

LINDA THOMPSON, individually and on behalf of all others similarly situated,   )
  )
  )
      Plaintiff,   )
  )
      v.   )   Case No.:
  )
ARMY AND AIR FORCE EXCHANGE SERVICE,   )
  )
  )
      Defendant.   )

**2022LA001292**

### CLASS ACTION COMPLAINT

Plaintiff, Linda Thompson, individually and on behalf of all others similarly situated, through her undersigned counsel, alleges for her Class Action Complaint against Defendant, Army and Air Force Exchange Service ("AAFES") as follows:

### INTRODUCTION

1.     This action arises from AAFES' violations of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. §1681g(c)(1), which requires merchants to refrain from disclosing certain credit and debit card account information on printed receipts provided to customers. Despite the clear language of the statute, AAFES knowingly or recklessly failed to comply with FACTA by disclosing the expiration date of Plaintiff's and the class members' credit and debit cards on purchase receipts provided to them at AAFES's stores. As a result, Plaintiff and AAFES's other customers suffered multiple injuries, including violation of their FACTA right to not have their private credit and debit card information disclosed on their receipts where an identity thief could find it, exposure to an increased risk of identity theft, breach of their confidence in the safe handling of their account information, invasion of privacy as a result of the disclosure of their

134124

account information to those of AAFES's staff or agents who handled the receipts, exposure to an increased risk of identity theft, and being forced to bear the burden of keeping or destroying the receipt to prevent further disclosure of their account information. These injuries are distinct and palpable, fairly traceable to AAFES' conduct.   Accordingly, Plaintiff and the proposed class members are entitled to an award of statutory damages as provided by 15 U.S.C. §1681n.

### JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction pursuant to Ill. Const. 1970, art. VI, § 9 because this is a justiciable matter or controversy appropriate for review by the court.

3.      Personal jurisdiction over AAFES exists under 735 ILCS 5/2-209(a)(1) (transaction of any business within this State) and 2-209(c) (any other constitutionally permissible basis).

4.       Venue in this County is proper under 735 ILCS 5/2-101.

### PARTIES

5.      Plaintiff, Linda Thompson, is and was at all times relevant hereto, a resident of Godfrey, Madison County, Illinois. Plaintiff ("RMCS Thompson") is a retired Navy Senior Chief Radioman (RMCS).

6.      Defendant, Army and Air Force Exchange ("AAFES"), is a joint, non-appropriated fund instrumentality of the United States organized under the Departments of the U.S. Army and the U.S. Air Force. AAFES, which operates under the name "the Exchange," provides retail services to soldiers, airmen, and their families through a network of stores located on U.S. Government installations throughout the United States, including the Exchange at Scott Air Force Base where RMCS Thompson made her purchase.

### FACTUAL ALLEGATIONS

**A.      Background of FACTA**

7.    Identity theft is a serious issue affecting both consumers and businesses. As of 2018, a Harris Poll revealed that nearly sixty million Americans have been affected by identity theft. There were a record high 16.7 million victims of identity fraud in 2017 alone, and account takeovers (when a thief opens a credit card account or other financial account using a victim's name and other stolen information) tripled in 2017 from 2016, causing $5.1 billion in losses. And in 2019, Americans lost a total of $16.9 billion to identity fraud according to a study by Javelin Strategy & Research. In a more recent Harris Poll conducted in 2021, 88 percent of Americans surveyed indicated they are concerned about data privacy, and 1 in 5 indicated they had experienced identity theft.

8.    In 2021, 4.2 million people filed a report for identity theft or fraud. *Consumer Sentinel Network, Data Book 2021* at 4, FEDERAL TRADE COMMISSION, https://www.ftc.gov/system/files/ftc_gov/pdf/CSN%20Annual%20Data%20Book%202021%20Final%20PDF.pdf (February 2022).

9.    Illinois ranked third among states with the highest per capita rates of reported identity theft with 117,056 reports. *Id.* at 21, 35.

10.    Upon signing FACTA into law, President George W. Bush remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush added that the government, through FACTA, was "act[ing] to protect individual privacy." *Id.*

11.    One FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a person's credit or debit card account from a receipt provided at the point of sale, which can fall into the hands of someone other than the cardholder. FACTA accomplishes this goal by requiring merchants to mask the card expiration of each

customer's credit or debit card on a transaction receipt provided at the point of sale, and by making

merchants who do not comply liable for statutory damages regardless of whether the customer

suffers actual damages. *See* 15 U.S.C. § 1681n(a)(1)(A).

12.     The applicable provision states:

> Except as otherwise provided in this subsection, no person that
> accepts credit cards or debit cards for the transaction of business
> shall print . . . the expiration date upon any receipt provided to the
> cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g) (the "Receipt Provision").

13.     Congress incorporated FACTA into the Fair Credit Reporting Act (15 U.S.C.

§1681, *et seq.*), and gave merchants three years to comply with the Receipt Provision—mandating

full compliance by no later than December 4, 2006.

14.     The Receipt Provision was widely publicized among retailers and the FTC. For

example, on March 6, 2003, in response to earlier state legislation enacting similar truncation

requirements, then-CEO of Visa USA, Carl Pascarella, explained:

> Today, I am proud to announce an additional measure to combat
> identity theft and protect consumers. * * * The card's expiration date
> will be eliminated from receipts altogether . . . . The first phase of
> this new policy goes into effect July 1, 2003 for all new terminals....

15.     Within twenty-four hours, MasterCard and American Express announced they were

imposing similar requirements.

16.     Card issuing organizations proceeded to require compliance with FACTA by

contract, in advance of FACTA's mandatory compliance date.

17.     Also, card processing companies continued to alert their merchant clients, including

AAFES, of FACTA's requirements:

> Certain countries, such as the U.S., may also have legal restrictions
> on . . . expiration date printing on cardholder transaction receipts

- 4 -

> and displays. For U.S.-based merchants, POS devices . . . must not
> provide the expiration date on cardholder transaction receipts.

Visa    Transaction    Acceptance    Device    Guide    (TADG),    at    21,

https://usa.review.visa.com/dam/VCOM/regional/na/us/partner-with-us/documents/transaction-

acceptance-device-guide-tadg.pdf (Nov. 1, 2016).

    18.    Similarly, American Express provided merchants with the following instructions

and exemplar receipt:

> Pursuant to Applicable Law, . . . do not print the Card's Expiration
> Date on the copies of Charge Records delivered to Cardmembers.
> [D]igits must be masked with replacement characters such as "x,"
> "*," or "#," and not blank spaces or numbers. Here is an example of
> a [truncated] Charge Record . . . :



American    Express    Merchant    Operating    Guide,    https://icm.aexp-

static.com/content/dam/gms/en_us/optblue/us-mog.pdf at 22 (July 17, 2020).

    19.    Likewise, in a section titled Primary Account Number (PAN) truncation and

Expiration Date Omission, MasterCard stated:

> A Transaction receipt generated by an electronic Terminal, whether
> attended or unattended, must not include the Card expiration date.

MasterCard Transaction Processing Rules, https://www.mastercard.us/content/dam/mccom/en-us/documents/TPR-manual-June2015.pdf, at 84 (June 9, 2015).

20.      So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined to set-up a free website (http://www.annualcreditreport.com) to comply with FACTA requirements and to provide consumers with a means of monitoring their credit reports for possible identity theft.

**B.      AAFES' Prior Knowledge of FACTA**

21.      AAFES had knowledge of FACTA's truncation requirement before it began violating the requirement *en masse*.

22.      AAFES accepts credit and debit card payments from its customers at all of its retail locations.

23.      Most of AAFES' business peers and competitors ensure their credit card and debit card receipt printing process remains in compliance with FACTA. AAFES could have readily done the same.

24.      AAFES maintains and controls a point-of-sale system that generates the receipts at issue herein, the contents of which are apparent to AAFES and any of the employees handling them. In the case of food court sales, AAFES provides and installs the point-of-sale system.

25.      It would have been a simple matter for AAFES to program its system to print receipts that do not display card expiration dates in compliance with FACTA, which it did not do. Instead, its systems were programed to print the card expiration dates.

26.      AAFES was not only informed to refrain from printing card expiration dates on receipts, but it was contractually prohibited from doing so. AAFES accepts credit and debit cards from all major issuers, such as Visa, MasterCard, American Express, and Discover. Each of these

- 6 -

companies sets forth requirements that merchants (such as and including AAFES) must follow, including FACTA's redaction and truncation requirements found in the Receipt Provision. *See Hawkins v. Capital Fitness, Inc.*, 2015 IL App (1st) 133716, ¶14 (2015) (party signing a contract charged with knowledge of its contents and bound by it).

### C.    Facts Relating to Plaintiff

27.    On or about February 7, 2022, RMCS Thompson used her personal credit card to make a purchase at the Exchange food court at Scott Air Force Base, Building 1981, 207 West Winters Street, Scott Air Force Base, Illinois. Again, on August 5, 2022, RMCS Thompson used her credit card to make another purchase at the Exchange.

28.    In connection with each of the foregoing purchases, the cashier provided RMCS Thompson with a receipt printed on Exchange point-of-sale receipt paper showing the card's expiration date.

29.    The disclosure of the card's expiration date on the receipts violated RMCS Thompson's FACTA rights.

### D.    AAFES' Willful Noncompliance with FACTA Receipt Requirements

30.    FACTA has been the law for nearly two decades, AAFES was aware of the law, and compliance with the law is simple.

31.    As alleged previously, AAFES controls the point-of-sale and payment system technology that it uses at every one of its retail locations, including the retail location that issued RMCS Thompson's receipts. This control includes, without limitation, negotiating, entering into, and acting pursuant to various contracts and agreements with the electronic payment processing company whose technology AAFES uses to process credit and debit card transactions.

- 7 -

32.    Furthermore, at all times relevant, AAFES was acting by and through its subsidiaries, agents, servants, and/or employees, each of whom acted within the course and scope of its agency or employment, under the direct supervision and control of AAFES.

33.    AAFES's store staff could see AAFES's point-of-sale system was displaying customer credit and debit card expiration dates on the face of customer receipts in each card transaction, day-in and day-out.

34.    Despite AAFES's awareness and control, it allowed its point-of-sale payment system to systematically generate credit and debit card receipts displaying its customers' card expiration dates, in violation of their FACTA rights.

35.    The willfulness of AAFES's FACTA violations is also demonstrated by its "continued use of a system whose characteristics would be known to any merchant who knows what is being spat out by its machinery." *Tran v. Kohl's Corp.*, No. BC661136 (L.A. Super. Ct. Feb. 9, 2018).

36.    At all times relevant hereto, AAFES acted willfully or in reckless disregard of the rights of the RMCS Thompson and other members of the class, causing them injury in fact to their interests in maintaining the privacy of the credit card and debit card information printed on the receipts they were provided that FACTA prohibits.

37.    Notwithstanding the fact that it has knowledge of the requirements of FACTA and the dangers imposed upon consumers through its failure to comply, Defendant willfully issued tens of thousands of transaction receipts containing the expiration dates of its customers' credit and debit cards.

37.    By printing numerous transaction receipts in violation of this long-standing and well-known federal statute, AAFES has caused its customers — to paraphrase the Honorable Judge

- 8 -

Richard A. Posner (Ret.) — "an unjustifiably high risk of harm that [wa]s either known or so obvious that it should [have been] known" to AAFES. *Redman v. RadioShack Corp.*, 768 F.3d 622, 627 (7th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

## CLASS ACTION ALLEGATIONS

38.     This action is brought as a class action under 735 ILCS 5/2-801. RMCS Thompson proposes the following class, subject to modification by the Court:

> All individuals in the United States or its territories who, from within two years preceding the filing of this Complaint ("Class Period") to the certification of the class, engaged in one or more transactions using a debit card or credit card at a retail location owned or operated by AAFES, at a time when the point-of-sale system used to process the transaction was programmed to print the expiration date of the debit or credit card used in the transaction on the customer receipt.

39.     RMCS Thompson falls within the class definition and is a member of the class. Excluded from the class is AAFES and any entity in which AAFES has a controlling interest, AAFES's attorneys, agents, and employees, RMCS Thompson's attorneys and their employees, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

40.     The other members of the class are capable of being described without any significant managerial or administrative problem.

41.     The point-of-sale system used by AAFES maintains records of all affected transactions.

42.     The class members are so numerous that joinder of all of them is impracticable. RMCS Thompson believes there are at least tens of thousands of persons in the class. The exact number and identity of class members is unknown to RMCS Thompson, but can be determined

from information in the possession, custody, or control of AAFES and/or its agents and/or the banks that issued its customers' credit/debit cards.

43.    Common questions of fact and law exist as to all members of the class, which predominate over any questions affecting only individual members of the class. *See* 735 ILCS 5/2-801(2). Questions common to the class include:

    a.    whether, during the Class Period, the payment-processing system AAFES used at its stores was programmed to print customer transaction receipts displaying customer credit or debit card expiration dates, in violation of FACTA;

    b.    whether AAFES's FACTA violations were knowing or reckless; and

    c.    the appropriate amount of statutory damages to award the class for AAFES's identical, willful violation of their FACTA rights.

44.    RMCS Thompson and her undersigned counsel will fairly and adequately protect the interests of the class, as required by 735 ILCS 5/2-801(3). RMCS Thompson has no interests that conflict with the interests of the class and seeks the same relief as the class. RMCS Thompson has retained counsel, competent and experienced in class and complex litigation, including FACTA litigation.

45.    A class action is an appropriate method for the fair and efficient adjudication of the controversy, as required by 735 ILCS 5/2-801(4). It is doubtful many class members are aware of their FACTA rights, and for any who are, the typical cost of litigating FACTA claims grossly exceeds the potential individual recovery such that it is unlikely any (let alone many or most) would be willing or able to afford or find counsel to prosecute their claims individually. Moreover, the potential for class relief is essential to induce AAFES to comply with the law, and the interest

of class members in individually controlling the prosecution of separate claims against AAFES is

small. Management of these claims is unlikely to present any significant difficulties.

### COUNT I – VIOLATIONS OF 15 U.S.C. § 1691(c)(g)

46.    RMCS Thompson incorporates the foregoing allegations as if fully alleged herein.

47.    15 U.S.C. §1681c(g) states as follows:

> Except as otherwise provided in this subsection, no person that
> accepts credit cards or debit cards for the transaction of business
> shall print . . . the expiration date upon any receipt provided to the
> cardholder at the point of the sale or transaction.

48.    This section applies to any "device that electronically prints receipts" (hereafter

"Devices") at the transaction location. 15 U.S.C. §1681c(g)(3).

49.    AAFES uses Devices for point-of-sale transactions at its retail locations.

50.    Despite AAFES's awareness and control of its store operations as described above,

and despite FACTA's longtime, unambiguous prohibition against displaying expiration dates on

receipts, AAFES electronically generated customer receipts to RMCS Thompson and the other

members of the class bearing the expiration dates of their credit or debit cards.

51.    AAFES's willful FACTA violations render it liable to RMCS Thompson and

members of the class for statutory damages of not less than $100 and not more than $1,000,

attorneys' fees, and costs. 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of

herself and the class against AAFES, as follows:

a.    granting certification of the class;

b.    awarding statutory damages;

c.    awarding attorneys' fees, litigation expenses, and costs of suit; and

d.    awarding such other and further relief as the Court deems proper.

Dated: October 14, 2022

Respectfully submitted,

LINDA THOMPSON

By:    _s/ Roy C. Dripps_____

Roy C. Dripps
ARMBRUSTER DRIPPS BLOTEVOGEL, LLC
51 Executive Plaza Court
Maryville, Illinois 62025
(618) 208-0320
royd@adwblaw.com

Keith J. Keogh
Michael S. Hilicki
William M. Sweetnam
KEOGH LAW, LTD.
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092
keith@keoghlaw.com
wsweetnam@keoghlaw.com

Scott D. Owens (pending admission *pro hac vice*)
SCOTT D. OWENS, P.A.
2750 N. 29th Avenue, Suite 209A
Hollywood, Florida 33020
(954) 589-0588
scott@scottdowens.com

*Attorneys for Plaintiff Linda Thompson*

***EFILED***
Case Number 2022LA001292
Date: 10/17/2022 11:28 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

LINDA THOMPSON, individually and on behalf of all others similarly situated,     )
)
)
    Plaintiff,     )
)
    v.     )     Case No.: 2022LA001292
)
ARMY AND AIR FORCE EXCHANGE SERVICE,     )
)
)
    Defendant.     )

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff, Linda Thompson, pursuant to 735 ILCS 5/2-801, *et seq.*, moves for certification of this case as a class action on behalf of the class defined below, and states:[1]

**I.    INTRODUCTION**

1.    Plaintiff brings this action on behalf of herself and a class of individuals who shopped at an Army and Air Force Exchange Service ("AAFES") store and paid using a credit or debit card. The receipts Plaintiff and the class members were provided disclosed their credit and debit card expiration dates, in violation of their privacy rights under the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), 15 U.S.C. §1681c(g)(1).

2.    FACTA was enacted to prevent identity theft and related harms by prohibiting merchants from revealing too much card data on the customer's transaction receipt, where an identity thief can find it, such as the card number or card expiration date. *See Redman v.*

---

[1] This motion is filed as a prophylactic measure to prevent the "pick off" of the named plaintiff, and will be supplemented with a memorandum of law and additional support after adequate discovery. *See Barber v. American Airlines, Inc.*, 241 Ill. 2d 450, 457 (2011) (where a tender of relief is made before the filing of a motion for class certification, the interests of the other class members are not before the court, and the case may properly be dismissed.)

*Radioshack Corp.*, 768 F.3d 622, 626 and 639 (7th Cir. 2014) ("identity theft is a serious problem,

and FACTA is a serious congressional effort to combat it * * * the less information the receipt

contains the less likely is an identity thief who happens to come upon the receipt to be able to

figure out the cardholder's full account information ...").

       3.     Specifically, FACTA aims "to protect consumers from the risk posed when credit

card account information is displayed on printed receipts at the point of sale." *Lee v. Buth-Na-*

*Bodhaige, Inc.*, 2019 IL App (5th) 180033 at ¶64; *Jeffries v. Volume Servs. Am.*, 928 F.3d 1059,

1065 (D.C. Cir. 2019) ("FACTA punishes conduct that *increases the risk* of third-party disclosure,

not the actual disclosure itself.") (italics in original). This is important because, as explained by

the FTC, "card numbers on sales receipts are a 'golden ticket' for fraudsters and identity thieves."

https://www.ftc.gov/tips-advice/business-center/guidance/slip-showing-federal-law-requires-all-

businesses-truncate. Indeed, when President George W. Bush signed FACTA into law, he

emphasized the importance of the FACTA's requirements as follows: "Slips of paper that most

people throw away should not hold the key to their savings and financial secrets."

https://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-2.html.

       4.     Accordingly, FACTA provides "no person that accepts credit cards or debit cards

for the transaction of business shall print more than the last 5 digits of the card number or the

expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."

15 U.S.C. § 1681c(g)(1).

       5.     Furthermore, to encourage merchants to comply with FACTA, and encourage

private enforcement when they do not, FACTA entitles successful plaintiffs to modest statutory

damages of $100 to $1,000 for any "willful" violation of their FACTA rights, regardless of

resulting harm. *See Lee*, 2019 IL App (5th) 180033 at ¶64 ("FACTA provides a private cause of

action for statutory damages and does not require a person to suffer actual damages in order to seek recourse for a willful violation of the statute. This is consistent with the preventative and deterrent purposes of FACTA.") (citing 15 U.S.C. §1681n); *see also Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010) (FACTA's "statutory damages provisions also effectuate the Act's deterrent purpose ... deterring businesses from willfully making consumer financial data available, even where no actual harm results.") (citation omitted).

6.      As alleged in the Complaint, AAFES's customer receipts violate FACTA because they display the customer's credit or debit card expiration date, and these violations are willful because AAFES was aware of FACTA's requirements, yet programmed its stores' computerized point-of-sale system to generate receipts that violate it. [Complaint at ¶1, ¶25, and ¶30].[2] Thus, Plaintiff brings this case on behalf of herself and the following proposed class:

> All individuals in the United States or its territories who, from within two years preceding the filing of this Complaint ("Class Period") to the certification of the class, engaged in one or more transactions using a debit card or credit card at a retail location owned or operated by AAFES, at a time when the point-of-sale system used to process the transaction was programmed to print the expiration date of the debit or credit card used in the transaction on the customer receipt.

[*Id.* at ¶39].

7.      This case is well suited for class treatment because AAFES subjected all class members to the same practice of displaying their card expiration dates on its customer receipts. *See Clark v. TAP Pharm. Prods., Inc.*, 343 Ill. App. 3d 538, 548 (5th Dist. 2003) ("A class action

---

[2] A "willful" violation is one that is either "knowing" or "reckless." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 59-60 (2007). This standard is met when the defendant violates FACTA's unambiguous truncation requirement despite being aware of it, or when its conduct is "'objectively unreasonable' in light of 'legal rules that were 'clearly established' at the time.'" *Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241, 249 (3rd Cir. 2012) (citing *Safeco*, 551 U.S. at 69-70).

- 3 -

can properly be prosecuted where the defendants allegedly acted wrongfully in the same basic manner as to an entire class …"). Along that line, whether AAFES's conduct is willful is a class-wide issue that is the same for every class member.

8.      Indeed, courts routinely certify FACTA cases for class treatment. *See, e.g., Bush v. Calloway Consol. Group River City, Inc.*, 2012 U.S. Dist. LEXIS 40450 at \*33-34 (M.D. Fla. Mar. 26, 2012) ("Courts routinely find class resolution superior in consumer protection actions, including those brought pursuant to FACTA.") (citations omitted); *In re Toys "R" Us – Delaware, Inc. – Fair and Accurate Credit Trans. Act (FACTA) Litig.*, 300 F.R.D. 347, 376 (C.D. Cal. 2013) ("The vast majority of courts outside this district have similarly found that common questions predominate in FACTA class actions.") (collecting cases).[3]

9.      This case should be no different because it easily satisfies the requirements for class certification under Illinois law.

## II.   THIS CASE MEETS THE REQUIREMENTS FOR CLASS CERTIFICATION.

10.     Class certification is a matter for the Court's discretion, so long as that discretion is "exercised within the framework of the rules of civil procedure governing class actions." *Lee*, 2019 IL App (5th) 180033 at ¶53. In making this determination, however, "the court

---

[3] Additional examples of the numerous decisions ruling class certification is proper in FACTA cases include *Altman v. White House Black Market*, 2017 U.S. Dist. LEXIS 221939 (N.D. Ga. Oct. 25, 2017), *report and rec. adopted*, 2018 U.S. Dist. LEXIS 169828 (N.D. Ga. Feb. 12, 2018); *Legg v. Spirit Airlines*, 315 F.R.D. 383 (S.D. Fla. 2015); *Engel v. Scully & Scully, Inc.*, 279 F.R.D. 117 (S.D.N.Y. 2011); *Armes v. Sogro, Inc.*, 2011 U.S. Dist. LEXIS 33241 (E.D. Wis. Mar. 29, 2011); *Rogers v. Khatra Petro, Inc.*, 2010 U.S. Dist. LEXIS 103599 (N.D. Ind. Sept. 29, 2010); *Miller-Huggins v. Mario's Butcher Shop*, 2010 U.S. Dist. LEXIS 16493 (N.D. Ill. Feb. 22, 2010); *Shurland v. Bacci Café & Pizzeria on Ogden*, 259 F.R.D. 151 (N.D. Ill. 2009); *Harris v. Best Buy Co.*, 254 F.R.D. 82 (N.D. Ill. 2008); *Redmon v. Uncle Julio's of Ill.*, 249 F.R.D. 290 (N.D. Ill. 2008); *Meehan v. Buffalo Wild Wings*, 249 F.R.D. 284 (N.D. Ill. 2008); *Matthews v. United Retail*, 248 F.R.D. 210 (N.D. Ill. 2008).

accepts the allegations of the complaint as true" and "should err in favor of" granting class certification. *Clark*, 343 Ill. App. 3d at 544-45.

11.    Class certification is proper when (1) the class is so numerous that joinder of all members if impracticable ("Numerosity"), (2) there are questions of fact or law common to the class which predominate over any questions affecting only individual members ("Commonality"), (3) the representative parties will fairly and adequately protect the interests of the class ("Adequacy"); and (4) a class action is an appropriate method for the fair and efficient adjudication of the controversy ("Appropriateness"). 735 ILCS 5/2-801. As explained below, each of these requirements is easily met here.

12.    <u>Numerosity</u>. The class must be "so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). It is not necessary to provide a precise class-size figure, but rather simply a basis to find the class is sufficiently large as to make joinder of all members impracticable. *See Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 771 (2d Dist. 2008) ("a good-faith, non-speculative estimate will suffice . . . .") (citations omitted). In general, a class of at least 40-50 members is sufficient. *See Chavez v. Don Stoltzner Mason Contr., Inc.*, 272 F.R.D. 450, 454 (N.D. Ill. 2011);[4] *see also Faison v. RTFX, Inc.*, 2014 IL App (1st) 121893 at ¶65 (reversing order dismissing the class allegations, finding "at least 52" members is enough).

13.    This low threshold is readily met here given the volume of AAFES's business. AAFES's stores offer tax-free shopping and military-exclusive pricing to military communities throughout the United States, and ended the 2021 fiscal year with $8.2 billion in revenue. Exchange Annual Report at pp. 2, 5, https://publicaffairs-sme.com/Community/home-v3/annual-reports/.

---

[4]  Because the procedural prerequisites of class certification are virtually the same under both 735 ILCS 5/2-801 and Federal Rule of Civil Procedure 23, this Court should find persuasive and adopt the reasoning of the federal FACTA decisions cited herein. *See Cruz*, 383 Ill. App. 3d at 761.

Furthermore, "[a] large number of customers compris[e] the Exchange's credit card base . . . ." *Id.* at 47 (Fin. Stmt. p.14). Thus, Plaintiff reasonably estimates the class includes tens of thousands of members. *See Cruz, supra,* at 771 ("a good-faith, non-speculative estimate will suffice")

14.    Plainly it is impracticable to join tens of thousands of persons as named plaintiffs. Accordingly, §2-801(1)'s numerosity requirement is satisfied.

15.    <u>Commonality</u>. The second requirement is the class claims must present at least one common issue of law or fact that predominates over issues affecting only individual class members (if any). *See* 735 ILCS 5/2-801(2); *Martin v. Heinold Commodities,* 117 Ill.2d 67, 81 (1987) ("certification required only that there be either a predominating common issue of law or fact, not both.") (citation omitted). "Determining whether issues common to the class predominate over individual issues requires the court to identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether these issues are common to the class." *Bueker v. Madison Cnty.,* 2016 IL App (5th) 150282 at ¶25.

16.    To prove a FACTA claim, Plaintiff and the class need only show by a preponderance of the evidence AAFES violated FACTA, and that the violation was willful. *See Soto v. Great Am.,* 2020 IL App (2d) 180911 at ¶17 ("when a person willfully fails to comply with FACTA's truncation requirements, the statute provides a private cause of action for statutory damages ....") (vacated pursuant to settlement). Thus, the substantive issues that control the outcome for Plaintiff and each class member are:

    a.  Whether AAFES's practice of providing customers with a receipt displaying the expiration date of the customers' credit or debit card violates FACTA; and

    b.  Whether AAFES's FACTA violations were willful (*i.e.* knowing or reckless) given its awareness of FACTA, and its decision to nevertheless program its system to display the customer's card expiration date on their receipts.

- 6 -

[*See* Complaint at ¶44].

17.    Both issues are common to the class members. The first is common because, by definition, all members engaged in a transaction at an AAFES store when the system used to process the transaction was programmed to display the customer's card expiration date on their receipt. [*See* above ¶6 (defining the class)]. Thus, their claims present the same legal question based on the same facts.

18.    The second issue is common because it turns on a single actor's (AAFES's) systematic conduct. Specifically, the Court must determine if AAFES's violation was "willful" given it programmed its system to generate receipts displaying card expiration dates despite its awareness of FACTA's unambiguous requirements, and despite its ability to see on the face of the receipts they display the card expiration date. [Complaint at ¶25, ¶30 and ¶33].[5]

19.    These common questions predominate because their "successful adjudication" for Plaintiff "will establish a right of recovery in favor of the other class members." *Bueker*, 2016 IL App (5th) 150282 at ¶26. Specifically, a finding AAFES's systematic generation of receipts displaying card expiration dates violated Plaintiff's FACTA rights also establishes a violation of the class members' rights, and a finding AAFES's violations were "willful" given its decision to program its system this to display this information, despite its awareness of FACTA, necessarily establishes that element for both Plaintiff and the class.

---

[5] AAFES's violations easily satisfy the test for willfulness. Again, a "willful" violation includes one that is "reckless." *Soto*, 2020 IL App (2d) 180911 at ¶32 (citing *Safeco*, 551 U.S. at 56-57). A violation is "reckless" when it is "'objectively unreasonable' in light of 'legal rules that were 'clearly established' at the time.'" *Fuges*, 707 F.3d at 249 (quoting *Safeco*, 551 U.S. at 69-70)). AAFES controls what information its stores display on receipts [Complaint at ¶24], and FACTA unambiguously prohibits displaying card expiration dates on customer receipts. 15 U.S.C. §1681c(g)(1). Accordingly, AAFES's violations are necessarily unreasonable.

20.    Thus, as is routine in FACTA cases, the "commonality" requirement is met. *See In re Toys "R" Us*, 300 F.R.D. at 376 ("The vast majority of courts outside this district have similarly found that common questions predominate in FACTA class actions.") (citing cases); *Shurland*, 259 F.R.D. at 159 ("The conduct at issue, Defendant's creation of computer-generated credit card receipts, is uniform across the class. ... The question of whether that conduct was willful (and consequently whether Defendant is liable) similarly predominates ....") (citation omitted); *see also S37 Mgmt. v. Advance Refrig. Co.*, 2011 IL App (1st) 102496 at ¶32 ("Where liability is premised on a common practice uniformly applied, as it is here, it is proper for the trial court to find the plaintiff's claims present questions of fact and law, common to the class, that predominate ....") (citation omitted).

21.    Adequacy. Section 2-801(3)'s "adequacy" element requires Plaintiff's interests be aligned with and not antagonistic to the interest of the unnamed class members, and that her counsel be "qualified, experienced and generally able to conduct the proposed litigation." *Steinberg v. Chicago Med. Sch.*, 69 Ill. 2d 320, 338 (1977).

22.    RMCS Thompson meets these requirements. First, her interests are fully aligned with the class members' interests. [See Exhibit 1 (Thompson Declaration) at ¶7]. Their claims each arise from the same underlying uniform course of conduct, and materially identical violations of the FACTA. Moreover, as a result of AAFES's uniform violations, she and the class members are entitled to recover the same relief, *i.e.*, statutory damages. *See Lee*, 2019 IL App (5th) 180033 at ¶64. Thus, Plaintiff is adequate. *See Steinberg*, 69 Ill. 2d at 338 ("Here plaintiffs' interests are not antithetical to those of other members of the class, but are the same.").

23.    Plaintiff's counsel is also adequate, as they have extensive class action litigation experience, including cases under FACTA, and have achieved some of the largest settlements in

- 8 -

FACTA history. [*See* Exhibit 2 (Keogh Declaration) ¶4-¶5; and Exhibit 3 (Owens Declaration) at ¶12-¶13].[6] Indeed, courts have found Plaintiff's attorneys adequate and appointed them class counsel in many FACTA cases. *See Flaum v. Doctor's Assocs.*, No. 16-cv-61198-CMA, ECF No. 83 at ¶6 (S.D. Fla. Mar. 23, 2017) ("the Court determines that Plaintiff's counsel, Scott D. Owens, Keith J. Keogh, [and] Michael S. Hilicki ... are adequate to represent the Class and appoints them Class Counsel."); *Legg*, 315 F.R.D. at 390 ("Plaintiff's attorneys are experienced and capable, and have served as class counsel in similar consumer class actions before."); *Muransky v. Godiva Chocolatier*, 2016 U.S. Dist. LEXIS 133695 at *7 (S.D. Fla. Sept. 28, 2016) ("Class Counsel effectively pursued the Settlement Class Members' claims before this Court."); *Guarisma v. Microsoft Corp.*, 2017 U.S. Dist. LEXIS 217296 at *4 (S.D. Fla. Feb. 28, 2017) ("the Court determines that Plaintiff's counsel, Scott D. Owens, Keith J. Keogh, [and] Michael S. Hilicki ... are adequate to represent the Class and appoints them Class Counsel."); *Legg v. Lab. Corp.*, 2016 U.S. Dist. LEXIS 122695 at *8 (S.D. Fla. Feb. 18, 2016) ("Class Counsel vigorously and effectively pursued the Settlement Class Members' claims before this Court in this complex case").

24.    Appropriateness. A class action satisfies §2-801(4)'s "appropriateness" requirement if it "(1) can best secure the economies of time, effort, and expense and promote a uniformity of decision or (2) can accomplish the other ends of equity and justice that class actions seek to obtain." *Clark*, 343 Ill. App. 3d at 552. Although only one of these two elements is necessary, this case satisfies both.

---

[6] *See, e.g., Flaum v Doctors Assocs.*, 16-cv-61198 (S.D. Fla. 2019) ($30.9 million); *Richardson v. IKEA N. Am. Servs.*, No. 2021 CH 5392 (Cir. Ct. Cook Cnty.) ($24.25 million) (pending final approval); *Martin v. Safeway*, 2020 CH 5480 (Cir. Ct. Cook Cnty., Ill.) ($20 million); *Legg v. Lab. Corp. of Am.*, No. 14-cv-61543 (S.D. Fla. 2016) ($11 million); and *Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978 (S.D. Fla. 2016) ($7.5 million).

25.     A class action here will secure economies of time, effort and expense, and promote a uniformity of decision, because it will resolve tens of thousands of identical claims in one fell swoop instead of burdening the court with individual litigation of the same issues over and over. *See Miner v. Gillette Co.*, 87 Ill. 2d 7, 18 (1981) ("the object of the class action procedure is to adjudicate a large number of very small claims in one proceeding."); *see also Legg*, 315 F.R.D. at 392 (certifying FACTA class action, noting "[t]he Court will not preside over hundreds of thousands of separate cases when one will do.").

26.     Likewise, a class action promotes equity and justice here because the class members are individuals, their claims are relatively small, and there is no reason to assume that most or even many of them possess the time, energy and wherewithal to try to vindicate their rights on their own. As noted by the Illinois Appellate Court:

> in our large and impersonal society, class actions are often the last
> barricade of consumer protection. The consumer class action
> provides restitution to the injured and deterrence to the wrongdoer;
> thus, the ends of equity and justice are attained.

*Clark*, 343 Ill. App. 3d at 552 (citation omitted).

27.     Finally, our appellate court holds the demonstration "the first three prerequisites of section 2-801 have been established makes it evident that the fourth requirement has been fulfilled as well." *Hall v. Sprint Spectrum L.P.*, 376 Ill. App. 3d 822, 833-34 (5th Dist. 2007) (citing *Clark*, 343 Ill. App. 3d at 552). As shown, that is the case here. Accordingly, for all of the above reasons, a class action is appropriate for resolving this dispute.

28.     Plaintiff will submit a supplemental memorandum in support of this motion upon the completion of appropriate discovery.

- 10 -

## III.    CONCLUSION

It is beyond reasonable dispute this case satisfies the class certification requirements of 735

ILCS 5/2-801. To the extent AAFES nonetheless chooses to contest class certification, discovery

will quickly confirm that the requirements of 735 ILCS 5/2-801 are met. Accordingly, Plaintiff

requests the following relief:

      a.     Entry of a scheduling order setting dates for Plaintiff to file a memorandum

in support of this motion (and for the parties to file response and reply briefs) after the

completion of appropriate discovery;

      b.     An order certifying the proposed class as defined above (or such amended

definition the Court finds to be appropriate under the law and facts);

      c.     Appointment of Plaintiff as representative of the class; and

      d.     Appointment of Plaintiffs' attorneys as class counsel.

Dated: October 17, 2022           Respectfully submitted,

                        LINDA THOMPSON

           By:     _s/ Roy C. Dripps_____

                        Roy C. Dripps
                        ARMBRUSTER DRIPPS BLOTEVOGEL LLC
                        51 Executive Plaza Court
                        Maryville, Illinois 62025
                        (618) 208-0320
                        royd@adwblaw.com

                        Keith J. Keogh
                        Michael S. Hilicki
                        William M. Sweetnam
                        KEOGH LAW, LTD.
                        55 West Monroe Street, Suite 3390
                        Chicago, Illinois 60603
                        (312) 726-1092
                        keith@keoghlaw.com
                        mhilicki@keoghlaw.com
                        wsweetnam@keoghlaw.com

- 11 -

Scott D. Owens (pending admission *pro hac vice*)
SCOTT D. OWENS, P.A.
2750 N. 29th Avenue, Suite 209A
Hollywood, Florida 33020
(954) 589-0588
scott@scottdowens.com

*Attorneys for Plaintiff Linda Thompson*

***EFILED***
Case Number 2022LA001292
Date: 10/17/2022 11:28 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

# EXHIBIT 1

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| LINDA THOMPSON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 2022LA001292 |
| ARMY AND AIR FORCE EXCHANGE SERVICE, | ) ) ) | |
| Defendant. | ) ) | |

**DECLARATION OF LINDA THOMPSON**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

I, Linda Thompson, certify under penalty of perjury, as provided for by 735 ILCS 5/1-109, that the following statements are true:

1. I am over the age of 18 and the named plaintiff in this lawsuit.

2. I have personal knowledge of the facts stated herein and, if called upon to testify to those facts, I could and would competently do so.

3. I understand that this is a proposed class action and that I am the proposed class representative.

4. I understand that a class action is a lawsuit brought by at least one person on behalf of a group of people who have been treated in the same or essentially the same manner by the defendant.

5. I understand the proposed class here includes other persons who, like me, Army and Airforce Exchange Service ("AAFES") made a credit or debit card purchase at an AAFES store at a time when the store's point-of-sale system was programmed to generate a customer receipt displaying the expiration date of the customer's card.

135053

6.    I am willing to be a representative of the class.

7.    To my knowledge, I have no interests antagonistic to those of the class members. I believe my interests are entirely consistent with the class members' interests because I seek relief for myself and the class for AAFES's common violation of its obligation to refrain from generating customer receipts that display customer credit and debit card expiration dates.

8.    I understand that as a class representative, I have the responsibility: a) to consider the class's interests when making any decisions about the case and make all such decisions in the interests of the class, not just my own interests; b) to participate in the case and consult with my attorneys about the case; and c) to testify at a deposition and/or trial and provide documents and information for use in the case if needed.

9.    I have arranged for my attorneys to advance all costs of this action, including the cost of notification of the class.

10.    I understand that courts have sometimes awarded people money for serving the class representative, but that I am not entitled to any such payment, and that I have not been promised or guaranteed money for being the class representative.

11.    I am not employed by or related to my attorneys in this matter.

Date: **Oct 3, 2022**

Linda Thompson (Oct 3, 2022 19:36 CDT)
Linda Thompson

2

***EFILED***
Case Number 2022LA001292
Date: 10/17/2022 11:28 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

# EXHIBIT 2

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| LINDA THOMPSON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 2022LA001292 |
| ARMY AND AIR FORCE EXCHANGE SERVICE, | ) ) ) | |
| Defendant. | ) ) | |

**DECLARATION OF KEITH J. KEOGH**

I, Keith J. Keogh, declare under penalty of perjury:

1.       I am over the age of eighteen and am fully competent to make this declaration. This declaration is based upon my personal knowledge and if called upon to testify to the matters stated herein, I could and would do so competently.

2.       As shown below, my firm has regularly engaged in major complex litigation involving the Fair and Accurate Credit Transactions Act, 15 U.S.C. §1681c(g) ("FACTA"), and other consumer issues. My firm has the resources necessary to conduct litigation of this nature, and has experience prosecuting class actions of similar size, scope, and complexity to the instant case.

3.       Keogh Law, Ltd. consists of six attorneys and focuses on consumer protection class actions. I am a shareholder of the firm and member of the bars of the United States Supreme Court, Court of Appeals for the First, Second, Third, Fifth, Seventh, Ninth and Eleventh Circuits, Eastern District of Wisconsin, Northern District of Illinois, Central District of Illinois, Southern District of Indiana, District of Colorado, Middle District of Florida, Southern District of Florida, the

1

135022

Illinois State Bar, and the Florida State Bar, as well as several bar associations and the National
Association of Consumer Advocates.

4.    Keogh Law has regularly engaged in major complex class action litigation,
including, in addition to the experience listed below, class actions involving FACTA. Indeed, my
firm served as class counsel in some of the largest all-cash FACTA class settlements in history,
including the $30.9 million settlement in *Flaum v Doctors Associates,* 16-CV-61198-CMA (S.D.
Fla. Mar. 11, 2019), which I understand to be the largest all-cash FACTA settlement in history.
The others include *Martin v. Safeway, Inc.*, 2020 CH 5480 (Cir. Ct. Cook Cnty., Ill.) ($20 million);
*Legg v. Laboratory Corp. of America Holdings*, No. 14-cv-61543-RLR (S.D. Fla. Feb. 18, 2016)
($11 million); *Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-JIC (S.D. Fla. Aug. 2, 2016) ($7.5
million); and *Muransky v. Godiva Chocolatier, Inc.*, No. 2020 CH 7156 (Cir. Ct. Cook Cnty. May
13, 2021) ($6.3 million).

5.    Other successful FACTA cases in which my firm has served as class counsel
include *Altman v. White House Black Market, Inc.*, No. 21-A-735 (Cobb Cnty., Ga., Dec. 9, 2021);
*Guarisma v. Alpargatas USA, Inc. d/b/a Havaianas,* Case No. 2020 CH 7426 (Cir. Ct. Cook Ctny.,
May 24, 2021); *Guarisma v. Microsoft Corp.*, No. 15-cv-24326-CMA (S.D. Fla., Oct. 27, 2017);
*Cicilline v. Jewel Food Stores, Inc.,* 542 F.Supp.2d 831 (N.D. Ill. 2008); *Harris v. Best Buy Co.,*
254 F.R.D. 82 (N.D. Ill. 2008); *Matthews v. United Retail, Inc.,* 248 F.R.D. 210 (N.D. Ill. 2008);
*Redmon v. Uncle Julio's, Inc.,* 249 F.R.D. 290 (N.D. Ill. 2008); *Harris v. Circuit City Stores, Inc.,*
No. 07 C 2512, 2008 U.S. Dist. LEXIS 12596 (N.D. Ill. Feb. 7, 2008); and *Pacer v. Rockenbach
Chevrolet Sales, Inc.,* 07 C 5173 (N.D. Ill. 2008).

6.    In my experience, although FACTA cases are straightforward, they can require
extensive litigation, including relating to the issue of willfulness, to reach a successful outcome.

2

*See, e.g., Legg v. Lab. Corp. of America*, 14-cv-61543, ECF 218, pp.4-5 (S.D. Fla. Feb. 18, 2016) (approximately 20 depositions, including 4 experts, two mediations, and no settlement until after hearing on summary judgment, class certification and dueling *Daubert* motions); and *Legg v. Spirit Airlines*, 14-cv-61978, ECF 146, pp.4-6 (S.D. Fla. July 11, 2016) (175,000 pages of documents, depositions (including one out of country), and class certification granted over the defendant's objection).

      7.     In my experience, identifying the class from a retailer's or its vendor's card transaction data is a straightforward, two-step administrative process. The first step is to subpoena the full card numbers from the defendant's card processor. The second step is to subpoena the banks (usually dozens) that issued their cards, since they have the name, address, and additional contact information such as e-mails for the class members. My firm has done this in numerous cases where we were able to send direct notice to the class. *See, e.g., Martin v. Safeway, Inc.*, 2020 CH 5480 (Cir. Ct. Cook Ctny., Ill.); *Guarisma, et al. v. Alpargatas USA, Inc.*, 2020 CH 7426 (Cir. Ct. Cook Ctny., Ill.); *Muransky, et al. v. The Cheesecake Factory, Inc.*, 19 STCV 43875 (Cal. Sup'r Ct., L.A. Ctny.); *Flaum v. Doctor's Assoc.*, 2019 U.S. Dist. LEXIS 40626 (S.D. Fla. Mar. 11, 2019); *Guarisma v. Microsoft*, 2017 U.S. Dist. LEXIS 227871 (S.D. Fla. Oct. 27, 2017); *Legg v. Spirit Airlines, Inc.*, 2016 U.S. Dist. LEXIS 185397 (S.D. Fla. Aug. 2, 2016); *Muransky v. Godiva Chocolatier*, 2016 U.S. Dist. LEXIS 133695 (S.D. Fla. Sept. 28, 2016).

### Additional Experience of the Firm and the Firm's Attorneys

      8.     In addition to the firm's FACTA experience above, my firm also was class counsel in two of the largest Telephone Consumer Protection Act ("TCPA") settlements in the country. *See Hageman v. AT&T Mobility LLC, et al.*, Case 1:13-cv-00050-DLC-RWA (D. MT.) (Co-Lead) ($45 million settlement) and *Capital One Telephone Consumer Protection Act Litigation*, et al.,

12-cv-10064 (N.D. Ill. Judge Holderman) (Liaison Counsel and additional Class Counsel) ($75 million settlement).

9.      The firm was lead or class counsel in the following consumer class settlements: *Gebka v. The Allstate Corp.*, 19-cv-6662 (N.D. Ill. Sept. 27, 2022); *Breda v. Cellco Partnership, et al.*, 16-cv-11512-DJC (D. Mass. Nov. 18, 2021); *Iverson v. Advanced Disposal Servs., Inc.*, No. 18-CV-00867-BJD-JBT (M.D. Fla. Mar. 1, 2022); *Braver v. Northstar Alarm Services, LLC*, No. 5:17-cv-00383-F (W.D. Okla. Nov. 3, 2020); *Goel v. Stonebridge of Arlington Heights, et al.*, 2018 CH 11015 (Cir. Ct. Cook Cty. Jun. 8, 2020); *Cook v. Wal-Mart Stores, Inc., et al.*, No. 3:16-cv-673-BRD-JRK (M.D. Fla. Jun. 4, 2020); *Cranor v. The Zack Group, Inc.,* No. 4:18-cv-00628-FJG (W.D. Mo. May 18, 2020); *Keim v. ADF MidAtlantic, LLC,* 2018 U.S. Dist. LEXIS 204548 (S.D. Fla. Mar. 20, 2020); *Hennessy, et al. v. Mid-America Apartment Communities, Inc., et al*., 4:17-cv-00872-BCW (W.D. Mo. Aug. 8, 2019); *Detter v. KeyBank, N.A.*, No. 16-cv-10036 (Jackson Ctny., Mo. July 12, 2019) (FCRA); *Leung v XPO Logistics, Inc.*, 15 CV 03877 (N.D. Ill. 2018); *Martinez v. Medicredit*, 4:16CV01138 ERW (E.D. Mo. 2018); *Martin v. Wells Fargo Bank, N.A.*, 16-cv-09483 (N.D. Ill. 2018) (FCRA); *Town & Country Jewelers, LLC v. Meadowbrook Insurance Group, Inc., et al*, 15-CV-02419-PGS-LHG (D. N.J. 2018); *Legg v. Am. Eagle Outfitters*, 2017 U.S. Dist. LEXIS 147645 (S.D.N.Y. Sept. 8, 2017), *aff'd* 923 F.3d 85 (2d Cir. 2019); *Stahl v. RMK Mgmt. Corp.*, 2015 CH 13459 (Cir. Ct. Cook Cty. Sept. 14, 2017); *Tripp v. Berman & Rabin, P.A.,* 2017 U.S. Dist. LEXIS 3971 (D. Kan. Jan. 9, 2017); *Markos v Wells Fargo*, 15-cv-01156-LMM (N.D. Ga.); *Ossola v Amex* 1:13-cv-04836 (N.D. Ill. 2016); *Luster v. Wells Fargo,* 15-1058-TWT (N.D. Ga.); *Prather v Wells Fargo*, 15-CV-04231-SCJ (ND. Ga); *Joseph et al. v. TrueBlue, Inc. et al.*, Case No. 3:14-cv-05963 (D. Wa.); *Willett, et al. v. Redflex Traffic Systems, Inc., et al.*, Case No. 13-cv-01241-JCH-RHS; *In re Convergent Outsourcing, Inc. Telephone Consumer Protection*

*Act Litigation,* Master Docket No. 3:13-cv-1866-AWT (D. Conn) (Interim Co-Lead); *De Los Santos v Millword Brown, Inc.*, 9:13-cv-80670-DPG (S.D. Fla.); *Allen v. JPMorgan Chase Bank, N.A.* 13-cv-08285 (N.D. Ill. Judge Palimeyer); *Cooper v NelNet*, 6:14-cv-314-Orl-37DAB (M.D. Fl.); *Thomas v Bacgroundchecks.*com, 3:13-CV-029-REP (E.D. Va.) (additional class counsel); *Lopera v RMS*, 12-c-9649 (N.D. Ill. Judge Wood); *Kubacki v Peapod*, 13-cv-729 (N.D. Ill. Judge Mason); *Wojcik v. Buffalo Bills, Inc.*, 8:12 CV 2414-SDM-TBM (M.D. Fla. Judge Merryday); *Curnal v. LVNV Funding, LLC.*, 10 CV 1667 (Wyandotte County, KS 2014); *Cummings v Sallie Mae*, 12 C-9984 (N.D. Ill. Judge Gottschall) (co-lead); *Brian J. Wanca, J.D., P.C. v. L.A. Fitness International, LLC*, Case No. 11-CV-4131 (Lake County, Ill. Judge Berrones); *Osada v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 42330 (N.D. Ill. Mar. 28, 2012) (FCRA); *Saf-T-Gard International, Inc. v. Vanguard Energy Services, L.L.C., et al*, 12-cv-3671 (N.D. Ill. 2013 Judge Gottschall); *Saf-T-Gard v TSI*, 10-c-7671, (N.D. Ill. Judge Rowland); *Cain v Consumer Portfolio Services, Inc.* 10-cv-02697 (N.D. Ill. Judge Keys); *Iverson v Rick Levin & Associates*, 08 CH 42955 Circuit Court Cook County (Judge Cohen); *Saf-T-Gard v Seiko,* 09 C 776 (N.D. Ill. Judge Bucklo); *Jones v. Furniture Bargains, LLC*, 09 C 1070 (N.D. Ill); *Saf-T-Gard v Metrolift*, 07 CH 1266 Circuit Court Cook County (Judge Rochford) (Co-Lead); *Bilek* v *Countrywide,* 08 C 498 (N.D. Ill. Judge Gottschell); *Pacer v. Rochenback,* 07 C 5173 (N.D. Ill. Judge Cole); *Overlord Enterprises* v. *Wheaton Winfield Dental Associates,* 04 CH 01613, Circuit Court Cook County (Judge McGann); *Whiting v. SunGard,* 03 CH 21135, Circuit Court Cook County (Judge McGann); *Whiting v. Golndustry*, 03 CH 21136, Circuit Court Cook County (Judge McGann).

10.    In addition, I was the attorney primarily responsible for the following class settlements: *Wollert v. Client Services,* 2000 U.S. Dist. LEXIS 6485 (N.D. Ill. 2000); *Rentas* v.

135022

*Vacation Break USA,* 98 CH 2782, Circuit Court of Cook County (Judge Billik); *McDonald* v. *Washington Mutual Bank,* supra; *Wright* v. *Bank One Credit Corp.,* 99 C 7124 (N.D. Ill. Judge Guzman); *Arriaga* v. *Columbia Mortgage,* 01 C 2509 (N.D. Ill. Judge Lindberg); *Frazier* v. *Provident Mortgage,* 00 C 5464 (N.D. Ill. Judge Coar); *Largosa* v. *Universal Lenders,* 99 C 5049 (N.D. Ill. Judge Leinenweber); *Arriaga* v. *GNMortgage,* (N.D. Ill. Judge Holderman); *Williams* v. *Mercantile Mortgage,* 00 C 6441 (N.D. Ill. Judge Pallmeyer); *Reid* v. *First American Title,* 00 C 4000 (N.D. Ill. Magistrate Judge Ashman); *Fabricant* v. *Old Kent, 99* C 6846 (N.D. Ill. Magistrate Judge Bobrick); *Mendelovits* v. *Sears,* 99 C 4730 (N.D. Ill. Magistrate Judge Brown); *Leon* v. *Washington Mutual,* 01 C 1645 (N.D. Ill. Judge Alesia).

11.     Keogh Law was appointed class counsel in *Keim v. ADF MidAtlantic*, LLC, 328 F.R.D. 668 (S.D. Fla. 2018); *Lanteri v. Credit Protection Ass'n, L.P.*, 2018 U.S. Dist. LEXIS 166345 (S.D. Ind. Sept. 26, 2018); *Braver v. Northstar Alarm Services, LLC*, 329 F.R.D. 320 (W.D. Okla. 2018); *Altman v. White House Black Mkt., Inc.*, 2017 U.S. Dist. LEXIS 221939 (N.D. Ga. Oct. 25, 2017), *aff'd*, 2018 U.S. Dist. LEXIS 169828 (N.D. Ga. Feb. 12, 2018) (FACTA); *Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499 (D. Kan. 2015); *In Re Convergent Outsourcing, Inc. Tel. Cons. Prot. Act Litig.*, Master Docket No. 3:13-cv-1866-AWT (D. Conn) (Interim Co-Lead); *Galvan v. NCO Fin. Sys.*, 2012 U.S. Dist. LEXIS 128592 (N.D. Ill. 2012); *Osada v. Experian Info. Solutions, Inc.*, 2012 U.S. Dist. LEXIS 42330 (N.D. Ill. Mar. 28, 2012) (FCRA); *Pesce v First Credit Services*, 11-cv-01379 (N.D. Ill. December 19 2011); *Smith v Greystone Alliance*, 09 CV 5585 (N.D. Ill. 2010); *Cicilline* v. *Jewel Food Stores, Inc.,* 542 F.Supp.2d 831 (N.D. Ill. 2008)(Co-Lead Counsel for FACTA class); *Harris* v. *Best Buy Co.,* 07 C 2559,2008 U.S. Dist. LEXIS 22166 (N.D. Ill. Mar. 20, 2008) (FACTA); *Matthews v. United Retail, Inc.,* 248 F.R.D. 210 (N.D. Ill. 2008)( FACTA class); *Redmon* v. *Uncle Julio's, Inc.,* 249 F.R.D. 290 (N.D.

Ill. 2008) (FACTA); *Harris* v. *Circuit City Stores, Inc.,* 2008 U.S. Dist. LEXIS 12596 (N.D. Ill. 2008) (FACTA); *Pacer v. Rockenbach Chevrolet Sales, Inc.,* 07 C 5173 (N.D. Ill. 2008) (FACTA).

      12.      Some reported cases of the firm involving consumer protection include: *Breda v. Cellco P'ship*, 934 F.3d 1 (1st Cir. 2019); *Evans v. Portfolio Recovery Assocs.*, 889 F.3d 337 (7th Cir. 2018); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3rd Cir. 2017) (finding a "nuisance and invasion of privacy resulting from a single prerecorded telephone call"); *Franklin v. Parking Revenue Recovery Servs.,* 832 F.3d 741 (7th Cir. 2016); *Leeb v. Nationwide Credit Co.*, 806 F.3d 895 (7th Cir. 2015); *Galvan v. NCO Portfolio Mgmt. Inc.*, 794 F.3d 716, 721 (7th Cir. 2015); S*mith v. Greystone,* 772 F.3d 448 (7th Cir. 2014); *Clark v Absolute Collection Agency,* 741 F.3d 487 (4th 2014); *Lox v. CDA, Ltd.,* 689 F.3d 818 (7th Cir. 2012); *Townsel v. DISH Network L.L.C.*, 668 F.3d 967 (7th Cir. Ill. 2012); *Catalan v. GMAC Mortgage Corp.*, No. 09-2182 (7th Cir. 2011); *Gburek v. Litton Loan*, 614 F.3d 380 (7th Cir. 2010); *Sawyer v. Ensurance Insurance Services* consolidated with *Killingsworth v. HSBC Bank Nev., NA.,* 507 F3d 614, 617 (7th Cir. 2007), *Echevarria et al. v. Chicago Title and Trust Co.,* 256 F3d 623 (7th Cir. 2001*); Demitro* v. *GMAC,* 388 Ill. App. 3d 15, 16 (1st Dist. 2009); *Hill v. St. Paul Bank,* 329 Ill. App. 3d 7051, 1768 N.E.2d 322 (1st Dist. 2002); *In re Mercedes-Benz Tele Aid Contract Litig.,* 2009 U.S. Dist. LEXIS 35595 (D.N.J. 2009); *Catalan v. RBC Mortg. Co.,* 2009 U.S. Dist. LEXIS 26963 (N.D. Ill. 2009); *Elkins v. Equifax, Inc.,* 2009 U.S. Dist. LEXIS 18522 (N.D. Ill. 2009*); Harris v. DirecTV Group, Inc.,* 2008 U.S. Dist. LEXIS 8240 (N.D. Ill. 2008); *In re TJX Cos., Inc., Fair* & *Accurate Credit Transactions Act (FACTA) Litig.*, 2008 U.S. Dist. LEXIS 38258 (D. Kan. 2008); *Martin v. Wal-Mart Stores, Inc.,* 2007 U.S. Dist. LEXIS 89715 (N.D. Ill. 2007); *Elkins v. Ocwen Fed. Sav. Bank Experian Info. Solutions, Inc.,* 2007 U.S. Dist. LEXIS 84556 (N.D. Ill. 2007); *Harris v. Wal-Mart Stores, Inc.,* 2007 U.S. Dist. LEXIS 76012 (N.D. Ill. 2007); *Stegvilas v. Evergreen Motors, Inc.,* 2007 U.S.

135022

Dist. LEXIS 35303 (N.D. Ill. 2007); *Cook v. River Oaks Hyundai, Inc.,* 2006 U.S. Dist. LEXIS

21646 (N.D. Ill. 2006); *Gonzalez v. W. Suburban Imps.,* Inc., 411 F. Supp. 2d 970 (N.D. Ill. 2006);

*Eromon v. GrandAuto Sales, Inc.,* 333 F. Supp. 2d 702 (N.D. Ill. 2004); *Williams v. Precision*

*Recovery, Inc.,* 2004 U.S. Dist. LEXIS 6190 (N.D. Ill. 2004); *Doe v. Templeton,* 2003 U.S. Dist.

LEXIS 24471 (N.D. Ill. 2003); *Ayala v. Sonnenschein Fin. Servs.,* 2003 U.S. Dist. LEXIS 20148

(N.D. Ill. 2003); *Gallegos v. Rizza Chevrolet, Inc., 2003* U.S. Dist. LEXIS 18060 (N.D. Ill. 2003);

*Szwebel v. Pap's Auto Sales, Inc.,* 2003 U.S. Dist. LEXIS 13044 (N.D. Ill. 2003); *Johnstone v.*

*Bank of America,* 173 F. Supp.2d 809 (N.D. Ill. 2001); *Leon v. Washington Mutual Bank,* 164 F.

Supp.2d 1034 (N.D. Ill. 2001); *Ploog v. HomeSide Lending,* 2001 WL 987889 (N.D. Ill. 2001);

*Christakos* v. *Intercounty Title,* 196 F.R.D. 496 (N.D. Ill. 2000); *Batten v. Bank One,* 2000 WL

1364408 (N.D. Ill. 2000); *McDonald v. Washington Mutual Bank,* 2000 WL 875416 (N.D. Ill.

2000); and *Williamson v. Advanta Mtge Corp.,* 1999 U.S. Dist. LEXIS 16374 (N.D. Ill. 1999). The

*Christakos* case significantly broadened title and mortgage companies' liability under Real Estate

Settlement Procedures Act ("RESPA") and *McDonald* is the first reported decision to certify a

class regarding mortgage servicing issues under the Cranston-Gonzales Amendment of RESPA.

13.    I have argued before the federal First, Fifth, Seventh, Eleventh Circuit Courts, the

First District Court of Illinois, the Fourth District Court of Appeal of Florida, and the Multidistrict

Litigation Panel in various cases including *Townsel v. DISH Network L.L.C.*, 668 F.3d 967 (7th

Cir. Ill. 2012)*; Catalan* v *GMACM* (7th Cir. 2010); *Gburek v. Litton Loan Servicing* (7th Cir.

2009); *Sawyer* v *Esurance* (7th Cir. 2007), *Echevarria, et al. v. Chicago Title and Trust Co.* (7th

Cir. 2001); *Morris* v *Bob Watson,* (lst. Dist. 2009); *Iverson v. Gold Coast Motors Inc.,* (1st Dist.

2009); *Demitro* v. *GMAC* (1st Dist. 2008), *Hill v. St. Paul Bank* (1st Dist. 2002), and *In Re: Sears,*

*Roebuck & Company Debt Redemption Agreements Litigation* (MDL Docket No. 1389).

8

*Echevarria* was part of a group of several cases that resulted in a nine million dollar settlement with Chicago Title.

14.     My published works include co-authoring and co-editing the 1997 supplement to *Lane's Goldstein Trial Practice Guide* and *Lane's Medical Litigation Guide.*

15.     I have lectured extensively on consumer litigation, including extensively on class actions and the TCPA. For example, he:

a.  Presented at the 2018 Fair Debt Collection Training Conference for two sessions on the TCPA.

b.  Presented at the National Consumer Law Center 2017 annual conference on the TCPA.

c.  Presented at the National Consumer Law Center 2016 annual conference on the TCPA.

d.  Presented at the 2016 Fair Debt Collection Training Conference for a session on TCPA Developments.

e.  Presented for the National Association of Consumer Advocates November 2015 webinar titled Developments and Anticipated Impact of Recent FCC TCPA Rules.

f.  Presented at the National Consumer Law Center 2015 annual conference in San Antonio, Tx. on the TCPA.

g.  Presented at the 2015 Fair Debt Collection Training Conference for three sessions on the TCPA.

h.  Presented at the National Consumer Law Center 2014 annual conference in Tampa Fl. for two sessions on the TCPA.

i.  Panelist for the December 2013 Strafford CLE Webinar titled TCPA Class Actions: Pursuing or Defending Claims Over Phone, Text and Fax Solicitations.

9

135022

j.   Panelist for the December 2014 Chicago Bar Association Class Action Seminar titled "Class Action Settlements in the Seventh Circuit: Navigating Turbulent Waters."

k.   Presented at the 2014 Fair Debt Collection Training Conference for three sessions on the TCPA.

l.   Panelist for the December 2013 Strafford CLE Webinar titled Class Actions for Telephone and Fax Solicitation and Advertising Post Mims. Leveraging TCPI lectured at the 2014 Fair Debt Collection Training Conference for three sessions on the TCPA.

m.   Panelist for the December 2013 Strafford CLE Webinar titled Class Actions for Telephone and Fax Solicitation and Advertising Post Mims. Leveraging TCPA Developments in Federal Jurisdiction, Class Suitability, and New Technology.

n.   Presented for the National Association of Consumer Advocates November 2013 webinar titled Current Telephone Consumer Protection Act Issues Regarding Cell Phones.

o.   Presenter for the November 2013 Chicago Bar Association Class Action Committee presentation titled Future of TCPA Class Actions.

p.   Speaker at the Social Security Administration's Chicago office in August 2013 on a presentation on identity theft, which included consumers' rights under the Fair Credit Reporting Act.

q.   Panelist for the May 14, 2013 Chicago Bar Association Class Action Seminar titled "The Shifting Landscape of Class Litigation" as well as for the March 20, 2013 Strafford CLE webinar titled "Class Actions for Telephone and Fax Solicitation and Advertising Post Mims. Leveraging TCPA Developments in Federal Jurisdiction, Class Suitability, and New Technology."

135022

r.  Lectured at the June 6, 2013 Consumer Law Committee of the Chicago Bar Association on the topic "Employment Background Reports under the Fair Credit Reporting Act: Improper consent forms to failure to provide background report prior to adverse action."

s.  Lectured at the 2013 Fair Debt Collection Training Conference for three sessions on the TCPA.

t.  Presented at the 2012 National Consumer Law Center annual conference for a session on the TCPA.

u.  Presented at the 2012 Fair Debt Collection Training Conference for a session on the TCPA.

v.  Panelist for Solutions for Employee Classification & Wage/Hour Issues at the 2011 Annual Employment Law Conference hosted by Law Bulletin Seminars.

w.  Lectured at the 2011 National Consumer Law Center conference for a session titled Telephone Consumer Protection Act: Claims, Scope, Remedies as well as lectured at the same 2011 National Consumer Law Center conference for a double session titled ABC's of Class Actions.

x.  Taught *Defenses to Foreclosures* for Lorman Education Services, which was approved for CLE credit, in 2008 and 2010.

y.  Guest lecturer on privacy issues at University of Illinois at Urbana-Champaign School of Law. In March 2010.

z.  Guest speaker for the Legal Services Office of The Graduate School and Kellogg MBA Program at Northwestern University for its seminar titled: "Financial Survival Guide: Legal Strategies for Graduate Students During A Period of Economic Uncertainty."

16.    I was selected as an Illinois Super Lawyer in 2014-2021 and an Illinois Super Lawyer Rising Star each year from 2008 through 2013 and my cases have been featured in local

11

135022

newspapers such as the Chicago Tribune, Chicago Sun-Times, The Naperville Sun, Daily Herald and RedEye.

**Michael S. Hilicki**

17.　　In 2014, Michael Hilicki joined the firm. He has spent nearly all of his more-than twenty-five year legal career helping consumers and workers subjected to unfair and deceptive business practices, and unpaid wage practices. He is experienced in a variety of consumer and wage-related areas including, but not limited to, the Fair Debt Collection Practices Act, Truth-in-Lending Act, Fair Credit Reporting Act (particularly FACTA), Real Estate Settlement Procedures Act, Illinois Consumer Fraud & Deceptive Business Practices Act, Telephone Consumer Protection Act, Fair Labor Standards Act and the Illinois Wage & Hour Law. He is experienced in all aspects of consumer and wage litigation, including arbitrations, trials and appeals.

18.　　Examples of the numerous certified class actions in which Michael has represented consumers or workers include: *Martin v. Safeway, Inc.*, 2020 CH 5480 (Cir. Ct. Cook Ctny., Ill.); *Iverson v. Advanced Disposal Servs., Inc.*, No. 18-CV-00867-BJD-JBT (M.D. Fla. Mar. 1, 2022); *Altman v. White House Black Market, Inc.*, No. 21-A-735 (Cobb Cnty., Ga., Dec. 9, 2021); *Guarisma v. Alpargatas USA, Inc. d/b/a Havaianas,* Case No. 2020 CH 7426 (Cir. Ct. Cook Ctny., May 24, 2021); *Muransky v. Godiva Chocolatier, Inc.*, No. 2020 CH 7156 (Cir. Ct. Cook Cnty. May 13, 2021); *Goel v. Stonebridge of Arlington Heights, et al.*, 2018 CH 11015 (Cir. Ct. Cook Cty.); *Stahl v. RMK Mgmt. Corp.*, 2015 CH 13459 (Cir. Ct. Cook Cty.); *Guarisma v. Microsoft Corp.*, No. 15-cv-24326-CMA (S.D. Fla.); *Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-CIV-JIC (S.D. Fla.); *Legg v. Laboratory Corporation of America, Holdings, Inc.*, No. 14-cv-61543-RLR (S.D. Fla.); *Joseph v. TrueBlue, Inc.*, 14-cv-5963-BHS (W.D. Wash.); *In Re Convergent Outsourcing, Inc. Telephone Consumer Protection Act Litigation*, Master Docket No. 3:13-cv-

12

1866-AWT (D. Conn); *Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499 (D. Kan. 2015); *Lanteri v. Credit Protection Ass'n, L.P.*, 2018 U.S. Dist. LEXIS 166345 (S.D. Ind. Sept. 26, 2018); *Eibert v. Jaburg & Wilk, P.C.*, 13-cv-301 (D. Minn.); *Kraskey v. Shapiro & Zielke, LLP*, 11-cv-3307 (D. Minn.); *Short v. Anastasi & Associates, P.A.*, 11-cv-1612 SRN/JSM (D. Minn.); *Kimball v. Frederick J. Hanna & Associates, P.C.*, 10-cv-130 MJD/JJG (D. Minn.); *Murphy v. Capital One Bank*, 08 C 801 (N.D. Ill.); *Nettles v. Allstate Ins. Co.*, 02 CH 14426 (Cir. Ct. Cook Cty.); *Sanders v. OSI Educ. Servs., Inc.*, 01 C 2081 (N.D. Ill.); *Kort v. Diversified Collection Servs., Inc.*, 01 C 0689 (N.D. Ill.); *Hamid v. Blatt Hasenmiller, et al.*, 00 C 4511 (N.D. Ill.); *Durkin v. Equifax Check Servs., Inc.*, 00 C 4832 (N.D. Ill.); *Torres v. Diversified Collection Services, et al.*, 99-cv-00535 (RL-APR) (N.D. Ind.); *Morris v. Trauner Cohen & Thomas*, 98 C 3428 (N.D. Ill.), *Mitchell v. Schumann*, 97 C 240 (N.D. Ill.); *Pandolfi, et al. v. Viking Office Prods., Inc.*, 97 CH 8875 (Cir. Ct. Cook Cty.); *Trull v. Microsoft Corp.*, 97 CH 3140 (Cir. Ct. Cook Cty.); *Deatherage v. Steven T. Rosso, P.A.*, 97 C 0024 (N.D. Ill.); *Young v. Meyer & Njus, P.A.*, 96 C 4809 (N.D. Ill.); *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 96 C 3233 (N.D. Ill.); *Holman v. Red River Collections, Inc.*, 96 C 2302 (N.D. Ill.); *Farrell v. Frederick J. Hanna*, 96 C 2268 (N.D. Ill.); *Blum v. Fisher and Fisher*, 96 C 2194 (N.D. Ill.); *Riter v. Moss & Bloomberg, Ltd.*, 96 C 2001 (N.D. Ill.); *Clayton v. Cr Sciences Inc.*, 96 C 1401 (N.D. Ill.); *Thomas v. MAC/TCS Inc., Ltd.*, 96 C 1519 (N.D. Ill.); *Young v. Bowman, et al.*, 96 C 1767 (N.D. Ill.); *Depcik v. Mid-Continent Agencies, Inc.*, 96 C 8627 (N.D. Ill.); and *Dumetz v. Alkade, Inc.*, 96 C 4002 (N.D. Ill.).

19.    Michael also has successfully argued a number of appeals, including *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337 (7th Cir. 2018); *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175 (11th Cir. 2019) (*vacated for rehearing en banc*); *Franklin v. Parking Rev. Recovery Servs.*, 832 F.3d 741 (7th Cir. 2016); *Smith v. Greystone Alliance, LLC*, 772 F.3d 448

135022

(7th Cir. 2014); *Shula v. Lawent*, 359 F.3d 489 (7th Cir. 2004); and *Weizeorick v. ABN AMRO Mortg. Group, Inc.*, 337 F.3d 827 (7th Cir. 2003).

20.    Michael has lectured on consumer law issues at Upper Iowa University, the Chicago Bar Association, and the National Consumer Law Center. He is a member of the Trial Bar of the United States District Court for the Northern District of Illinois, and he has represented consumers in state and federal courts around the country on a *pro hac vice* basis.

21.    Michael's published work includes *"AND THE SURVEY SAYS..." When Is Evidence of Actual Consumer Confusion Required to Win a Case Under Section 1692g of the Fair Debt Collection Practices Act in the Seventh Circuit?*, 13 Loy. Consumer L. Rev. 224 (2001).

**Timothy J. Sostrin**

22.    Timothy J. Sostrin is a partner with the firm joining in 2011. He is a member in good standing of the Illinois bar, the U.S. District Court District of Colorado, U.S. District Court Northern District of Illinois, U.S. District Court Northern and Southern Districts of Indiana, U.S. District Court Eastern and Western Districts of Michigan, U.S. District Court Eastern District of Missouri, U.S. District Court Southern District of Texas and U.S. District Court Eastern and Western Districts of Wisconsin.

23.    Timothy J. Sostrin has represented consumers in Illinois and in federal litigation nationwide against creditors, debt collectors, retailers, and other businesses engaging in unlawful practices. Tim has extensive experience with consumer claims brought under the Fair Debt Collection Practices Act, The Telephone Consumer Protection Act, the Fair Credit Reporting Act, the Electronic Fund Transfer Act, and Illinois law. Some of Tim's representative cases include: *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3rd Cir. 2017) (argued); *Leeb v. Nationwide Credit Co.*, 806 F.3d 895 (7th Cir. 2015) (argued); *Osada v. Experian Info. Solutions, Inc.*, 2012

14

U.S. Dist. LEXIS 42330 (N.D. Ill. Mar. 28, 2012) (granting class certification); *Galvan v. NCO Financial Systems, Inc.*, 2012 U.S. Dist. LEXIS 128592 (N.D. Ill. 2012)(granting class certification); *Saf-T-Gard International, Inc. v. Vanguard Energy Services, LLC*, (2012 U.S. Dist. LEXIS 174222 (N.D. Ill. December 6, 2012) (granting class certification); *Jelinek v. The Kroger Co.*, 2013 U.S. Dist. LEXIS 53389 (N.D. Ill. 2013) (denying defendant's motion to dismiss); *Hanson v. Experian Information Solutions, Inc.*, 2012 U.S. Dist. LEXIS 11450 (N.D. Ill. January 27, 2012) (denying defendant's motion for summary judgment); *Warnick v. DISH Network, LLC*, 2013 U.S. Dist. LEXIS 38549 (D. Colo. 2013) (denying defendant's motion to dismiss);*Torres v. Nat'l Enter. Sys.*, 2013 U.S. Dist. LEXIS 31238 (N.D. Ill. 2013) (denying defendant's motion to dismiss); *Griffith v. Consumer Portfolio Serv.*, 838 F. Supp. 2d 723 (N.D. Ill. 2011)(denying defendant's motion for summary judgment); *Frydman et al v. Portfolio Recovery Associate*, 2011 U.S. Dist. LEXIS 69502 (N.D. Ill 2011) (denying defendant's motion to dismiss); *Rosen Family Chiropractic S.C. v. Chi-Town Pizza*, 2013 U.S. Dist. LEXIS 6385 (N.D. Ill. 2013) (denying defendant's motion to dismiss); *Sengenberger v. Credit Control Services, Inc.*, 2010 U.S. Dist. LEXIS 43874 (N.D. Ill. May 5, 2010) (granting summary judgment on TCPA claim).

24.    Tim is a member of the National Association of Consumer Advocates and ISBA. He received his Juris Doctorate, *cum laude*, from Tulane University Law School in 2006.

**Theodore H. Kuyper**

25.    In March 2018, Theodore H. Kuyper joined the firm. Ted is currently a member in good standing of the Illinois State Bar, the United States District Court for the Northern District of Illinois, and the Seventh Circuit Court of Appeals, and has been admitted to practice *pro hac vice* in several additional United States District Courts.

26.     Ted has diverse experience prosecuting and defending class action and other large-scale litigation in trial and appellate courts under a variety of substantive laws, including without limitation the Telephone Consumer Protection Act, the Racketeer Influenced & Corrupt Organizations Act (RICO), the Fair Credit Reporting Act, the Illinois Consumer Fraud & Deceptive Business Practices Act, and the Real Estate Settlement Procedures Act, as well as Illinois and other state statutory and common law.

27.     Since joining the firm, Ted has represented consumers as counsel of record or otherwise in the following putative class actions: *Cranor v. Skyline Metrics, LLC*, No. 4:18-cv-00621-DGK (W.D. Mo.); *Cranor v. The Zack Group, Inc.*, No. 4:18-cv-00628-FJG (W.D. Mo.); *Cranor v. Classified Advertising Ventures, LLC, et al.*, No. 4:18-cv-00651-HFS (W.D. Mo.); *Morgan v. Orlando Health, Inc., et al.*, No. 6:17-cv-01972-CEM-GJK (M.D. Fla.); *Morgan v. Adventist Health System/Sunbelt, Inc.*, No. 6:18-cv-01342-PGB-DCI (M.D. Fla.); *Burke v. Credit One Bank, N.A., et al.*, No. 8:18-cv-00728-EAK-TGW (M.D. Fla.); *Motiwala v. Mark D. Guidubaldi & Associates, LLC*, No. 1:17-cv-02445 (N.D. Ill.); *Buja v. Novation Capital, LLC*, No. 9:15-cv-81002-KAM (S.D. Fla.); and *Detter v. Keybank, N.A.*, No. 1616-CV10036 (Circuit Ct. of Jackson County, Missouri).

28.     Immediately prior to joining Keogh Law, Ted worked at a boutique Chicago law firm where he represented clients in a range of complex commercial and other litigation, including contract, tort, professional liability, premises and products liability, bad faith and class action. Previously, he was an associate at a nationally-renowned class action law firm, where he focused on complex commercial, consumer, class action and other large-scale, high-stakes litigation.

29.     Ted earned his Juris Doctorate from Washington University School of Law in St. Louis in 2007. During law school, he worked as a Summer Extern for Magistrate Judge Morton

16

Denlow (Ret.) of the United States District Court for the Northern District of Illinois, served as primary editor and executive board member of the Global Studies Law Review, and authored a student note that was published in 2007. Ted also earned a number of scholarships and other academic accolades, including the Honors Scholar Award (top 10% for academic year) and repeated appearances on the Dean's List.

### Gregg Barbakoff

30.     Gregg Barbakoff joined the firm in 2019. He is a civil litigator who focuses his practice on consumer law. Gregg has extensive experience litigating individual and class claims arising under the Telephone Consumer Protection Act, Fair Debt Collection Practices Act, Truth-in-Lending Act, Fair Credit Reporting Act, Real Estate Settlement Procedures Act, Illinois Consumer Fraud and Deceptive Practices Act, Magnuson-Moss Warranty Act, and various consumer protection statutes.

31.     Gregg graduated *magna cum laude* from the Chicago-Kent College of law, where he was elected to the Order of the Coif. While in law school, Gregg received the Class of 1976 Honors Scholarship, competed as a senior member of the Chicago-Kent Moot Court Team, and served as an editor for The Seventh Circuit Review, in which he was also published. Gregg earned his undergraduate degree from the University of Colorado at Boulder.

32.     Gregg has been named an Illinois Rising Star by *Superlawyers* Magazine each year since 2015, and was named an Associate Fellow by the Litigation Counsel of America. He is licensed to practice in the State of Illinois, the United States District Court for the Northern District of Illinois, and the United States Court of Appeals for the Seventh Circuit

17

135022

33.    Prior to joining Keogh Law, Gregg worked at a mid-size litigation firm that specialized in consumer litigation, and leading plaintiff's firm that focused on commercial disputes and consumer class actions.

34.    The following are representative class actions in which Gregg has served as counsel of record or otherwise: *Roberts v. TIAA, FSB* (Case No. 2019 CH 04089, Cook County, Ill.); *Corrigan v. Seterus* (Case No. 17-cv-02348); *Gentleman v. Mass. Higher Ed. Corp., et al* (Case No. 16-cv-3096, N.D. Ill.); *Cibula v. Seterus* (Case No. 2015CA010910, Palm Beach County, Fla.); *Ciolini v. Seterus* (Case No. 15-cv-09427, N.D. Ill.); *Mednick v. Precor Inc.* (Case No. 14-cv-03624, N.D. Ill.); *Illinois Nut & Candy Home of Fantasia Confections, LLC v. Grubhub, Inc., et al.* (Case No. 14-cv-00949, N.D. Ill.); *Dr. William P. Gress et al. v. Premier Healthcare Exchange West, Inc.* (Case No. 14-cv-501, N.D. Ill.); *Stephan Zouras LLP v. American Registry LLC* (Case No. 14-cv-943, N.D. Ill.); *Mullins v. Direct Digital* (Case No. 13-cv-01829, N.D. Ill.); *In Re Prescription Pads TCPA Litig.* (Case No. 13-cv-06897, N.D. Ill); *Townsend v. Sterling* (Case No. 13-cv-3903, N.D. Ill); *Windows Plus, Incorporated v. Door Control Services, Inc.* (Case No. 13-cv-07072, N.D. Ill); *In re Energizer Sunscreen Litig.*, (Case No. 13-cv-00131, N.D. Ill.); *Padilla v. DISH Network LLC* (Case No. 12-cv-07350, N.D. Ill.); *Lloyd v. Employment Crossing* (Case No. BC491068 (Los Angeles County, Cal.); *In re Southwest Airlines Voucher Litig.* (Case No. 11-cv-8176, N.D. Ill.).

**William Sweetnam**

35.    William Sweetnam joined the firm in 2020 as of counsel. Mr. Sweetnam concentrates his practice class action and complex litigation and appeals, having prosecuted hundreds of consumer, shareholder and antitrust class action in federal and state courts across the country.  In addition to representing both plaintiffs and defendants in a wide variety of

18

135022

cases involving both economic and non-economic injuries, Mr. Sweetnam has acted as lead counsel, co-lead counsel and has been a member of the executive and steering committees in consumer, antitrust and other class action, complex and multidistrict litigation matters.

36.    Notably, Mr. Sweetnam was appointed sole lead counsel in *Kelly v. Old National Bank*, 82C01-1012-CT-627 (Cir. Ct Vanderburgh Cty., Ind.), in which he obtained a settlement valued at more than 90% of the class' damages incurred as a result of the unlawful overdraft fee scheme alleged therein, far exceeding the results obtained by much larger firms against some the countries' largest banks, resulting in individual consumers receiving several thousand dollars in refunded overdraft fees.

37.    Additionally, Mr. Sweetnam has numerous published, class action decisions including *Jett v. Warrantech Corp.*, ---F.Supp.3d---, 2020 WL 525045 (S.D. Ill. 2020); *Old Nat. Bank v. Kelly*, 31 N.E.3d 522 (Ind. App. 2014); *Nava v. Sears, Roebuck & Co.*, 995 N.E.2d 303 (1st Dist. 2013); *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118 (11th Cir. 2010); *Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010); *In re Digitek Prod. Liab. Litig.*, 264 F.R.D. 249 (S.D. W. Va. 2010); *Aleman v. Park West Galleries, Inc.*, 655 F. Supp. 2d 1378 (J.P.M.L. 2009); *In re Park West Galleries, Inc. Mktg. & Sales Practices Litig.*, 645 F. Supp. 2d 1358 (J.P.M.L. 2009); *In re Digitek Prod. Liab. Litig.*, 648 F. Supp. 2d 795 (S.D. W. Va. 2009); *Vernon v. Qwest Communs. Int'l, Inc.*, 643 F. Supp. 2d 1256 (W.D. Wash. 2009); *Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758 (N.D. Ohio 2009); *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 626 F. Supp. 2d 1353 (J.P.M.L. 2009); *In re Refrigerant Compressors Antitrust Litig.*, 626 F. Supp. 2d 1320 (J.P.M.L. 2009); *Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009); *Coneff v. AT&T Corp.*, 620 F. Supp. 2d 1248 (W.D. Wash. 2009); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009); *In re Nissan N. Am., Inc. Odometer Litig.*, 664 F. Supp. 2d 873 (M.D. Tenn. 2009);

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009); *In re Digitek Prods. Liab. Litig.*, 571 F. Supp. 2d 1376 (J.P.M.L. 2008); *In re BP Prods. N. Am., Inc.*, 560 F. Supp. 2d 1377 (J.P.M.L. 2008); *Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008); *In re Nissan N. Am., Inc. Odometer Litig.*, 542 F. Supp. 2d 1367 (J.P.M.L. 2008); *Berry v. Budget Rent a Car Sys.*, 497 F. Supp. 2d 1361 (S.D. Fla. 2007); *Cook v. Home Depot U.S.A., Inc.*, 62 U.C.C. Rep. Serv. 2d (Callaghan) 197 (S.D. Ohio 2007); *Womack v. Nissan N. Am., Inc.*, 550 F. Supp. 2d 630 (E.D. Tex. 2007); *Knudsen v. Liberty Mut. Ins. Co.*, 435 F.3d 755 (7th Cir. 2006); *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805 (7th Cir. 2005); *Knudsen v. Liberty Mut. Ins. Co.*, 405 F. Supp. 2d 916 (N.D. Ill. 2005); *Enzenbacher v. Browning-Ferris Indus. of Ill.*, 774 N.E.2d 858 (Ill. App. 2002); *In re Nat'l Life Ins. Co.*, 247 F. Supp. 2d 486 (D. Vt. 2002); *Kaskel v. N. Trust Co.*, 45 U.C.C. Rep. Serv. 2d (Callaghan) 827 (N.D. Ill. 2001); *Wardrop v. Amway Asia Pac. Ltd.*, Fed. Sec. L. Rep. (CCH) P91,346 (S.D.N.Y. Mar. 20, 2001); and *Grove v. Principal Mut. Life Ins. Co.*, 14 F. Supp. 2d 1101 (S.D. Iowa 1998).

38.     Before joining Keogh Law, Ltd., Mr. Sweetnam began his career as a lawyer representing plaintiffs in catastrophic injury cases in 1994. In 1995, he began defending corporate, insurance industry and insurance policyholder clients and ran a successful class action litigation boutique, Sweetnam LLC, established in 2008.

39.     Prior to that, Mr. Sweetnam was a partner at a Chicago class action litigation boutique, where he perfected his skills representing victims of consumer fraud and deceptive and anti-competitive practices. Mr. Sweetnam has extensive litigation experience in a variety of nationwide class actions in state and federal courts alleging violations of consumer fraud and deceptive trade practices statutes, breach of warranty and violations of federal securities laws, shareholder derivative suits and appeals.

20

135022

40.    Mr. Sweetnam began his career as a class action and complex litigation practitioner with what is now known as Kessler Topaz Meltzer & Check, LLP, one of the largest class action law firms in the United States, where he was part of a team of lawyers involved in prosecuting class actions challenging abusive marketing practices in several areas involving life insurance and annuities. These cases led to class settlements valued at hundreds of millions of dollars, and sometimes even billions of dollars, with such major life insurance companies as Prudential, Met Life, John Hancock, New York Life, State Farm, American Express/IDS, Transamerica, and many others, as well as to numerous changes in industry sales practices.

41.    Mr. Sweetnam continued his career at one of Chicago's oldest and most respected class action litigation firms, Krislov & Associates, Ltd., where he represented consumers and investors engaged in an array of nationwide class actions in state and federal courts involving everything from consumer fraud to breach of warranty and securities and shareholder derivative lawsuits and appeals.

42.    Additionally, Ms. Sweetnam is also a member of a number of associations, including The Federal Bar Associations, Chicago Chapter, The Chicago Bar Association, and The Catholic Lawyers Guild of Chicago.

43.    Mr. Sweetnam received his bachelor's degree at The University of Michigan, Ann Arbor, Michigan in 1990. And later received his juris doctorate degree at the University of Michigan and the De Paul University College of Law where he received the American Jurisprudence Award in Constitutional Law and was a member of the Journal of Art and Entertainment Law. He has written and lectured on class actions and class action litigation reform.

44.    Mr. Sweetnam has lectured on and lectured on such topics as the following: (a) *Law of Remedies: Damages, Equity and Restitution,* at Chicago-Kent College of Law (2019); (b) *Law*

*of Remedies: Class Actions and Complex Litigation,* at Chicago-Kent College of Law (2018); (c) *The Class Action Fairness Act of 2005: Selecting a Forum and Keeping It,* at the Illinois Institute for Continuing Legal Education in Chicago, Illinois (2008); (d) *Federalization of Consumer Class Action Litigation: The Class Action Fairness Act of 2005,* at the John Marshall Law School in Chicago, Illinois (2006).

Executed at Chicago, Illinois, on October 14, 2022.

Keith J. Keogh

135022

22

***EFILED***
Case Number 2022LA001292
Date: 10/17/2022 11:28 AM
Thomas McRae
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

# EXHIBIT 3

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | | |
|---|---|---|
| LINDA THOMPSON, individually and on behalf of others similarly situated | ) ) ) | |
| Plaintiff, | ) | Case No. 2022LA001292 |
| v. | ) ) | |
| ARMY AND AIR FORCE EXCHANGE SERVICE, | ) ) ) | |
| Defendant. | ) | |

**DECLARATION OF SCOTT D. OWENS, ESQ.
IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

I, Scott D. Owens, declare under penalty of perjury, as provided for under 735 ILCS 5/1-109, that the following statements are true:

1. I am an attorney and the owner of a law firm which operates under the name Scott D. Owens, P.A. I am one of the attorneys representing Plaintiff, Linda Thompson, in this matter.

2. I am currently a member in good standing of the bars of the following courts:

| Court | Date Admitted |
|---|---|
| State of Florida | October 2, 2002 |
| USDC Southern District of Florida | October 10, 2008 |
| USDC Middle District of Florida | June 23, 2009 |
| Eleventh Circuit Court of Appeals | April 30, 2012 |
| USDC Eastern District of Michigan | January 9, 2014 |
| Sixth Circuit Court of Appeals | May 20, 2015 |
| USDC Northern District of Florida | February 12, 2019 |

3. I am a 2000 graduate of the New England School of Law. After a short time working in a debt collection law firm, I began to represent persons in consumer

rights litigation, both in State and Federal Court. Currently, 100% percent of my workload consists of consumer protection litigation, which includes claims brought under FACTA.

4.    Since 2007, I have been an active member of the National Association of Consumer Advocates (NACA).

5.    My federal litigation practice was featured in the Daily Business Review on June 15, 2009 in an article entitled "Federal Law Used Against Abusive Debt Collectors."

6.    I was Featured Guest Speaker at the request of the Miami-Dade Consumer Services Department during National Consumer Protection Week on March 11, 2011.

7.    I instructed a CLE seminar for Legal Services of Greater Miami, Inc., dealing with consumer protection (May 2011).

8.    I conducted a CLE on the topic of consumer protection at Florida International University (June 2012).

9.    I was invited by the Consumer Protection Law Committee to be a guest speaker at the Florida Bar's Annual Convention to be held in Orlando, Florida (June 25-28, 2014).

10.   I regularly attend legal seminars hosted by the National Consumer Law Center (NCLC), and the National Association of Consumer Advocates (NACA) including the following:

- National Consumer Law Center, 17th Annual Consumer Rights Litigation Conference (2008)
- National Consumer Law Center, Fair Debt Collection Training Conference (2009)
- National Association of Consumer Advocates, Fair Credit Reporting Act Conference (2009)
- National Consumer Law Center, 18th Annual Consumer Rights Litigation Conference (2009)
- National Consumer Law Center, Fair Debt Collection Training Conference (2010)
- National Consumer Law Center, 19th Annual Consumer Rights Litigation Conference (2010)

2

- National Consumer Law Center, 20th Annual Consumer Rights Litigation Conference (2011)
- National Consumer Law Center, 21st Annual Consumer Rights Litigation Conference (2012)
- National Consumer Law Center 22nd Annual Consumer Rights Litigation Conference (2013)
- National Consumer Law Center, Fair Debt Collection Training Conference (2014)
- National Consumer Law Center 23rd Annual Consumer Rights Litigation Conference (2014)
- National Consumer Law Center, Fair Debt Collection Training Conference (2015)
- National Consumer Law Center 24th Annual Consumer Rights Litigation Conference (2015)
- National Consumer Law Center, Fair Debt Collection Training Conference (2016)
- National Consumer Law Center 25th Annual Consumer Rights Litigation Conference (2016)
- National Consumer Law Center, Fair Debt Collection Training Conference (2017)
- National Consumer Law Center 26th Annual Consumer Rights Litigation Conference (2017)
- National Consumer Law Center 27th Annual Consumer Rights Litigation Conference (2018)
- National Consumer Law Center, Fair Debt Collection Training Conference (2019)
- National Consumer Law Center 28th Annual Consumer Rights Litigation Conference (2019)
- National Consumer Law Center 29th Annual Consumer Rights Litigation Conference (2020)
- National Association of Consumer Advocates, Annual Spring Training Conference (2022)

11.    Of the aforesaid legal conferences, I have attended at least five intensive full-day seminars which have dealt exclusively with class action litigation; I am familiar with the ethical and professional guidelines governing class action litigation.

12.    I believe I am generally regarded by my peers as one of the leading authorities in the State of Florida with respect to the Fair and Accurate Credit Transactions Act (FACTA).

13.     I served as co-lead counsel in the following successful FACTA class actions:

- *Legg v. E Z Rent-A-Car*, No. 14−cv−01716−PGB−DAB (M.D. Fla. Filed Oct. 22, 2014) ($6 million settlement);
- *Legg v. Laboratory Corporation of America Holdings*, No. 14−61543-CIV (S.D. Fla. Filed July 6, 2014) ($11 million common fund settlement);
- *Legg v. Spirit Airlines, Inc.*, No. 14−cv-61978 (S.D. Fla. Filed Aug, 29, 2014) ($7.5 million common fund settlement);
- *Wood v. J Choo USA, Inc.*, No. 15-CV-81487 (S.D. Fla. Filed Oct. 27, 2015) ($2.5 million common fund settlement);
- *Guarisma v. Microsoft, Inc.*, No. 15-CV-24326 (S.D. Fla. Filed Nov. 20, 2015) ($1.2 million common fund settlement);
- *Flaum v. Doctors Associates, Inc.*, No. 16-CV-61198 (S.D. Fla. Filed June 6, 2016) ($30.9 million common fund settlement);
- *Escobar v. Major League Baseball*, et al., No. 18STCV02491 (LA County Sup. Ct. Filed October 28, 2018) ($850 thousand common fund settlement);
- *Diaz v. Chapters Health System, Inc.*, 18-CV-03052 (M.D. Fla. Filed Dec. 19, 2018) ($1.3 million common fund settlement);
- *Donahue v. Everi Payments, Inc.*, et al., No. 2018-CH-15419 (Cook Cty. Cir. Ct. Filed Dec. 12, 2018) ($14 million common fund settlement);
- *Muransky v. Godiva Chocolatier, Inc.*, No. 2020-CH-7156 (Cook Cty. Cir. Ct. Filed Dec. 8, 2020) ($6.3 million common fund settlement);
- *Martin v. Safeway*, No. 2020-CH-05480 (Cook Cty. Cir. Ct. Filed Aug. 20, 2020) ($20 million common fund settlement);
- *Richardson v. IKEA North America Services, LLC*, et al., No. 2021CH05392 (Cook Cty. Cir. Ct. Filed Oct. 21, 2021) ($24.25 million common fund settlement, pending final approval).

14.     In several FACTA cases, my firm has used credit/debit card data to subpoena various banks in order to identify and locate class members. These cases include: *Diaz v. Chapters Health System, Inc.*; *Escobar v. Major League Baseball, et al.*; and *Richardson v. IKEA North America Services, LLC, et al.* (ongoing).

15.     I was also appointed joint interim lead counsel in the Southern District of Florida TCPA class action lawsuit, *Soto v. Gallup, Inc.*, No. 0:13-cv-61747-RSR wherein Judge Robin S. Rosenbaum stated that "Scott D. Owens has vast experience in the area of consumer protection litigation…" (emphasis added); I was later appointed

co-lead counsel after the case was certified ($12 million-dollar common fund settlement).

16.    I am confident in the strength of the claims alleged, and my law firm is fully prepared to commit all necessary resources, financial, professional and otherwise in order to oversee the adequate administration of the instant class action litigation as well as to protect the best interests of the Class.

Under penalties of perjury, I declare that I have read the foregoing declaration and that the facts stated in it are true.

Executed at Hollywood, Florida, on Friday, October 14, 2022.

By: s/ *Scott D. Owens*
    Scott D. Owens, Esq.

5

ADWB Law LLC
51 EXECUTIVE PLAZA CT
MARYVILLE IL 62062-5838

$7.60    US POSTAGE
FIRST-CLASS
Nov 03 2022
Mailed from ZIP 62062
11 OZ FIRST-CLASS MAIL FLATS RATE
ZONE 1

11923275

stamps
endicia

062S0012913542

**USPS CERTIFIED MAIL**



**9407 1118 9876 5816 3114 51**

United States Attorney
Rachelle Aud Crowe
9 EXECUTIVE DR
UNITED STATES ATTORNEYS OFFICE
FAIRVIEW HEIGHTS IL 62208-1344



USPS CERTIFIED MAIL™

RECEIVED

NOV 0 4 2022

UNITED STATES ATTORNEY'S OFFICE
Southern District of Illinois